1   REBECCA EISEN, State Bar No. 096129
    JENNIFER SVANFELDT, State Bar No. 233248
2   MORGAN, LEWIS & BOCKIUS, LLP
    One Market, Spear Street Tower
3   San Francisco, CA 94105-1126
    Tel:  415.442.1000
4   Fax:  415.442.1001
    reisen@morganlewis.com
5   jsvanfeldt@morganlewis.com

6   JILL A. PORCARO, SBN 190412
    MORGAN, LEWIS & BOCKIUS LLP
7   300 South Grand Avenue, 22nd Floor
    Los Angeles, CA 90071
8   Tel:  213.612.2500
    Fax:  213.612.2501
9   jporcaro@morganlewis.com

10  Attorneys for Defendant
    SERVISAIR, LLC

11

12                      UNITED STATES DISTRICT COURT

13                     NORTHERN DISTRICT OF CALIFORNIA

14

15  ROBERT NAVARRO,                    Case No. CV-08-2716-MHP

16                Plaintiff,           **SERVISAIR LLC'S OPPOSITION TO**
                                       **PLAINTIFF'S MOTION TO REMAND**
17          vs.
                                       Date:  August 4, 2008
18  SERVISAIR, a Limited Liability     Time:  2:00 p.m.
    Corporation; and DOES 1 through 50, Dept.:  Courtroom 15
19  Inclusive,

20                Defendant.

21

22

23

24

25

26

27

28

SERVISAIR LLC'S OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND                              CASE NO. CV-08-2716-MHP

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY OF OPPOSITION ...............................................1

II.   RELEVANT FACTS AND PROCEDURAL HISTORY ................................................1

    A.   Procedural History. ..................................................................................................1

    B.   Relevant Facts...........................................................................................................3

        1.   Citizenship of Servisair LLC. .......................................................................3

        2.   Citizenship of Servisair's Owners. ...............................................................4

            a.   Servisair Holding Corp. .....................................................................4

            b.   Penauille Holding Inc........................................................................4

        3.   Servisair LLC and Plaintiff Robert Navarro.................................................4

III.  THIS COURT HAS DIVERSITY JURISDICTION ....................................................7

    A.   Plaintiff and Servisair LLC Are Diverse...................................................................7

        1.   None of Servisair's Owners Were Organized Under the Laws of California. ......................................................................................................7

        2.   Neither Servisair Nor Any of its Owners' Operations Substantially Predominate in California. ...........................................................................7

            a.   The Relative Size of California Should Be Considered In Determining Whether An Entity's Business Operations Substantially Predominate There. .....................................................9

        3.   Employees of Servisair And Its Owners Do Not Substantially Predominate in California. .........................................................................10

            a.   Servisair LLC. ..................................................................................11

            b.   Servisair Holding Corp. and Penauille Holding Inc. ....................11

        4.   Tangible Property of Servisair And Its Owners Do Not Substantially Predominate in California. ...................................................11

            a.   Servisair LLC. ..................................................................................11

            b.   Servisair Holding Corp. and Penauille Holding Inc. ....................12

        5.   Revenue of Servisair And Its Owners Do Not Substantially Predominate in California. .........................................................................12

            a.   Servisair LLC. ..................................................................................12

            b.   Servisair Holding Corp. and Penauille Holding Inc. ....................12

        6.   The Executive and Administrative Functions Substantially Predominate in Texas. ..............................................................................12

            a.   Servisair LLC. ..................................................................................12

            b.   Servisair Holding Corp. and Penauille Holding Inc. ....................13

    B.   The Amount in Controversy Vastly Exceeds $5,000,000.................................13

        1.   Wages and Statutory Penalties. ...................................................................15

        2.   Attorneys Fees..............................................................................................16

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

SERVISAIR LLC'S OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND

i

CASE NO. CV-08-2716-MHP

1

**TABLE OF CONTENTS**
(continued)

2

Page

3

IV.    PLAINTIFF'S CLAIMS INVOKE FEDERAL QUESTIONS .......................................17

4

    A.    Plaintiff's Claims Are Preempted by the Labor Management Relations Act and the Railway Labor Act...................................................................................17

5

        1.    The Railway Labor Act. ...................................................................17

6

        2.    The Labor Management Relations Act....................................................18

        3.    Plaintiff's Fourth Cause of Action Is Preempted Because The CBA And The QSP Must Be Interpreted and Applied to Resolve It...............19

7

8

        4.    Plaintiff's Remaining State Law Causes of Action Are Preempted by the LMRA and RLA. ...................................................................19

9

    B.    This Court Should Exercise Supplemental Jurisdiction Over Plaintiff's Remaining State Law Claims. .................................................................20

10

    C.    Defendant May Set Out More Specifically The Grounds for Removal Through an Opposition to Remand and Supporting Declarations........................21

11

V.    CONCLUSION ........................................................................................22

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

1

# TABLE OF AUTHORITIES

2

**Page**

3

**Cases**

4

*Abrego Abrego v. The Dow Chemical Co.,*
443 F.3d 676 (9th Cir. 2006) .................................................................................................13

5

*Adams v. Executive Airlines, Inc.,*
258 F.3d 7 (1st Cir. 2001) .....................................................................................................20

6

*Alexander v. FedEx,*
2005 U.S. Dist. LEXIS 5129 (N.D. Cal. Mar. 24, 2005) ..........................................14, 16, 21

7

8

*Allen v. R&H Oil & Gas Co.,*
63 F.3d 1326 (5th Cir. 1995) .................................................................................................22

9

*Allis Chambers v. Lueck,*
471 U.S. 202 (1985) .........................................................................................................18, 19

10

11

*Arellano v. Home Depot U.S.A., Inc.,*
245 F. Supp. 2d 1102 (S.D. Cal. 2003) .........................................................................9, 10, 11

12

*Avco Corp. v. Machinists,*
390 U.S. 557 (1968) ...................................................................................................18, 19, 20

13

14

*Bodner v. Oreck Direct, LLC,*
2006 U.S. Dist. LEXIS 77193, * 4 (Oct. 10, 2006) ..............................................................7, 14

15

*Brady v. Mercedes-Benz USA,*
243 F. Supp.2d 1004 (N.D. Cal. 2002) ...................................................................................16

16

17

*Bran v. Sun Pac. Farming Coop.,*
2007 U.S. Dist. LEXIS 19235, *8 (E.D. Cal. Mar. 1, 2007)....................................................21

18

*Cavanaugh v. Unisource Worldwide, Inc.,*
2006 U.S. Dist. LEXIS 28208 (E.D. Cal. Apr. 28, 2006) ....................................................9, 10

19

20

*Chabner v. United of Omaha Life Ins. Co.,*
225 F.3d 1042 (9th Cir. 2000) ...............................................................................................14

21

*Cram v. Elec. Data Sys. Corp.,*
2008 U.S. Dist. LEXIS 2847 (S.D. Cal. 2008) ................................................................14, 17

22

23

*Hale v. Mastersoft Intern. Pty. Ltd.,*
93 F.Supp.2d 1108 (D. Colo. 2000)..........................................................................................7

24

*Havel v. SunAmerica Securities, Inc., et al.,*
2006 U.S. Dist. LEXIS 77244, *4 (N.D. Cal. Oct. 11, 2006) ..................................................1

25

26

*Hawaiian Airlines, Inc. v. Norris,*
512 U.S. 246 (1994) .........................................................................................................17, 18

27

28

Morgan, Lewis &
Bockius LLP
Attorneys At Law
New York

iii

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Ho v. Ikon Office Solutions, Inc.*,
143 F. Supp. 2d 1163 (N.D. Cal. 2001)...................................................................8, 10

4

*In re Quintus Securities Litigation*,
148 F.Supp.2d 967 (N.D. Cal. 2001) ...........................................................................16

5

6

*Industrial Tectonics, Inc. v. Aero Alloy*,
912 F.2d 1090 (9th Cir. 1990) .......................................................................................8

7

*Johnson v. Columbia Pictures Anchorage, LP*,
437 F.3d 894 (9th Cir. 2006) .........................................................................................7

8

9

*Korn v. Polo Ralph Lauren Corp.*,
536 F. Supp. 2d 1199 (E.D. Cal 2008) ...................................................................13, 14

10

*Lingle v. Norge Div. of Magic Chef, Inc.*,
486 U.S. 399 (1988) ...............................................................................................18, 19

11

*Lowdermilk v. U.S. Bank Nat'l Ass'n*,
479 F.3d 994 (9th Cir. 2007) .......................................................................................13

12

13

*Lurie Co. v. Loew's San Francisco Hotel Corp.*,
315 F. Supp. 405 (N.D. Cal. 1970) ................................................................................8

14

*Rippee v. Boston Market Corp.*,
408 F. Supp. 2d 982 (S.D. Cal. 2005) .....................................................................13, 14

15

16

*Scherer v. Equitable Life Assurance Society of the United States*,
347 F.3d 394 (2d Cir. 2003) .........................................................................................13

17

*Schroeder v. Trans World Airlines, Inc.*,
702 F.2d 189 (9th Cir. 1983) ...........................................................................18, 19, 20

18

19

*Singer v. State Farm Mut. Auto. Ins. Co.*,
116 F.3d 373 (9th Cir. 1997) ..................................................................................13, 21

20

*Textile Workers v. Lincoln Mills*,
353 U.S. 448 (1957) .....................................................................................................18

21

22

*Tosco Corp. v. Communities for a Better Env't*,
236 F.3d 495 (9th Cir. 2001) .........................................................................................8

23

*Trainmen v. Chicago R. & I.R. Co.*,
353 U.S. 30 (1957)........................................................................................................18

24

25

*Trs. of the Constr. Indus. and Laborers Health and Welfare Trust v.
Desert Valley Landscape and Maint., Inc.*,
333 F.3d 923 (9th Cir. 2003) .......................................................................................20

26

27

*Unger v. Del E. Webb Corp.*,
233 F. Supp. 713 (N.D. Cal. 1964) ................................................................................9

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

SERVISAIR LLC'S OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND

iv

CASE NO. CV-08-2716-MHP

1

### TABLE OF AUTHORITIES
(continued)

2

Page

3    *Willingham v. Morgan*,
        395 U.S. 402 (1969) ...................................................................................21

4    **Regulations**

5    28 U.S.C. § 1332(d)(2) .................................................................................7

6    28 U.S.C. § 1367(a) ....................................................................................20

7    28 U.S.C. § 1367(c)(1) ................................................................................21

8    45 U.S.C. § 151a ...................................................................................17, 18

9    Cal. Bus. & Prof. Code § 17200 ..................................................................21

10   Cal. Lab. Code § 203 ...................................................................................21

11   Cal. Lab. Code § 221 .....................................................................................2

12   Cal. Lab. Code § 223 .....................................................................................2

13   Cal. Lab. Code § 226 ................................................................................2, 21

14   Cal. Lab. Code § 226.7 .............................................................................2, 21

15   Cal. Lab. Code § 510 .....................................................................................2

16   Cal. Lab. Code § 512 .....................................................................................2

17   Cal. Lab. Code §§ 201-203 ............................................................................2

18   Class Action Fairness Act of 2005, Pub. L. No. 109-2,
19       28 U.S.C. § 1332(d) (Feb. 8, 2005) ........................................................1

20   Labor Management Relations Act of 1947 § 301(a), 61 Stat. 156,
         29 U.S.C. § 185(a) .................................................................................18

21   Labor Management Relations Act of 1947 § 301, 61 Stat. 156,
22       29 U.S.C. § 185 ................................................................................18, 19

23   **Orders**

24   13B Wright, Miller & Cooper, FEDERAL PRACTICE & PROCEDURE Jurisdiction 2d § 3625
         (1984) ......................................................................................................9

25   15 J. Moore, MOORE'S FEDERAL PRACTICE § 102.54[2] (3d ed. 2006) ..............8

26   C. Wright, A. Miller & M. Kane, FEDERAL PRACTICE & PROCEDURE
27       § 3733 (3d ed. 1998) .............................................................................21

28

MORGAN, LEWIS &
  BOCKIUS LLP
ATTORNEYS AT LAW
   NEW YORK

SERVISAIR LLC'S OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND                    v                    CASE NO. CV-08-2716-MHP

**TABLE OF AUTHORITIES**
(continued)

Page

**Regulations**

IWC Wage Order 14 ....................................................................................................21

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

1    **I.    INTRODUCTION AND SUMMARY OF OPPOSITION**

2              Defendant Servisair LLC ("Servisair" or "the company") properly removed this case

3    under Title 28 U.S.C. Sections 1332 and 1441.  The requirements for diversity jurisdiction exist,

4    and jurisdiction in this Court is proper.[1]  In the alternative, removal is proper under federal

5    question jurisdiction.  Although Plaintiff Robert Navarro ("Plaintiff") claims that Servisair has

6    not established its citizenship as a limited liability company, he does <u>not</u> claim that Servisair or

7    any of its owners are in fact citizens of California (they are not).  The citizenship of Servisair's

8    owners does not change the fact that Servisair is not a citizen of California, as all owners are

9    themselves diverse.  Furthermore, Servisair has submitted evidence and analyses which establish

10   that it is "more likely than not" that the "amount in controversy" vastly exceeds $5,000,000.

11             When jurisdiction is challenged, the removing party may submit, and the Court may

12   consider, evidentiary facts and analyses provided with the opposition.  The Court may rely

13   directly on these facts and analyses or construe them to be an amendment to the removal petition

14   under Title 28 U.S.C. Section 1653.  Because Servisair has established that diversity jurisdiction

15   exists, Plaintiff Robert Navarro's motion should be denied.

16   **II.    RELEVANT FACTS AND PROCEDURAL HISTORY**

17             **A.    Procedural History.**

18             On April 24, 2008, Plaintiff filed a wage and hour action in the Superior Court of the State

19   of California for the County of San Francisco, in which he alleged seven causes of action on

20   behalf of himself and <u>all</u> current and former Servisair employees who worked in California from

21   April 2004 to April 2008.[2]  The causes of action are largely based on Plaintiff's allegation that

22   employees regularly worked through their meal periods.  Accordingly, Plaintiff claims that he and

23   members of the class were not only not compensated for all hours actually worked but

24   additionally are entitled to one hour of pay at the employee's regular rate of compensation for

---

25   [1]/    Plaintiff Robert Navarro claims this case should be remanded because Servisair has not
26   established diversity jurisdiction or federal question jurisdiction.  Servisair need only establish
     one of these grounds for removal purposes.  *See Havel v. SunAmerica Securities, Inc., et al.*, 2006
     U.S. Dist. LEXIS 77244, *4 (N.D. Cal. Oct. 11, 2006) (J. Hamilton).
27   [2]/    This action was therefore commenced <u>after</u> the effective date of the Class Action Fairness
28   Act of 2005 ("CAFA"), Pub. L. No. 109-2 (enacted Feb. 18, 2005), codified at 28 U.S.C. sections
     1332(d), 1453 and 1711-1715.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

1    each workday that a proper meal period was not provided.

2         Plaintiff also claims that Servisair "unlawfully [took] deductions from Plaintiffs' and

3    similarly situated employees compensation to cover health benefits that were neither requested

4    nor received." Compl., ¶ 61.  Plaintiff's claim is not in fact an "unlawful deduction" claim, but

5    rather a breach of contract claim.  Based on Servisair's understanding, the essence of Plaintiff's

6    claim is that, because he did not opt for health benefits, he should have been paid the higher of

7    two hourly rates provided by the collective bargaining agreement which governs the terms and

8    conditions of his (and all class members') employment.  *See supra Section II.B.3.*

9         Plaintiff seeks the following damages: (1) all damages available for violations of Labor

10   Code Sections 201-203, 221, 223, 226, 226.7, 510, 512, unpaid wages, overtime wages, meal

11   period pay, and purported unlawful deductions from wages; (2) statutory penalties and waiting

12   time penalties; (3) restitution for costs incurred for Servisair's alleged failure to provide overtime,

13   meal period pay, and failure to repay amounts unlawfully deducted and interest thereon; (4) an

14   award of attorneys' fees and costs to Plaintiff and the putative class members; (5) a declaratory

15   judgment that Servisair's violations were willful; and (6) an equitable accounting to identify,

16   locate and restore to all current and former employees the wages allegedly due.  *See*, Compl.

17   Prayer for Relief, p. 21-23.

18        On May 5, 2008, the Summons, Civil Case Cover Sheet and Complaint were served upon

19   Servisair by process server.  Declaration of Jennifer Svanfeldt ("Svanfeldt Decl."), ¶ 2.

20        On May 29, 2008, Servisair filed and served its Answer in San Francisco Superior Court

21   to Plaintiff's unverified complaint.  Later that same day, Servisair removed the action asserting

22   grounds for both diversity jurisdiction and federal question jurisdiction.

23        On June 27, 2008, Plaintiff filed the present motion to remand.  At no point prior to filing

24   the motion did Plaintiff contact or attempt to contact Servisair to meet and confer about the

25   substance of the motion to remand.  Svanfeldt Decl., ¶ 3.

26   / / / /

27   / / / /

28   / / / /

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

SERVISAIR LLC'S OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND        2        CASE NO. CV-08-2716-MHP

1

B.     **Relevant Facts**.

2

1.     **Citizenship of Servisair LLC**.

3     Servisair is, and was at the time of the institution of this action, a limited liability

4     company organized and existing under the laws of Delaware.  Declaration of Craig Allen ("Allen

5     Decl.,") ¶ 11.

6     Servisair LLC has two owners which collectively hold 100% of the ownership interests of

7     the company: (1) Servisair Holding Corp. (incorporated in Delaware), which holds 64.2% of the

8     ownership interests; and (2) Penauille Holding Inc. (incorporated in Delaware), which holds

9     35.8% of the ownership interests.  Servisair LLC is a citizen of Delaware because these two

10    owners are also organized under the laws of Delaware.  Allen Decl., ¶¶ 4, 5.

11    Servisair LLC's Chief Executive Officer ("CEO") resides in Paris, France and works in

12    Manchester, England.  Servisair LLC's President, Vice President, General Counsel and Secretary,

13    Treasurer, Vice President of Human Resources, Regional Vice President, and Vice President and

14    Controller all work and reside in Houston, Texas.  Allen Decl., ¶ 16.

15    The following administrative functions are located in Houston, Texas: payroll, human

16    resources, accounting, finance, marketing and information systems.  Servisair's legal department

17    also is located in Houston, Texas.  Allen Decl., ¶ 17.

18    The largest amount of Servisair's tangible property is located in New York.  As of April 1,

19    2008, approximately 24% of Servisair's tangible property is located in New York, 21% of its

20    tangible property is located in Illinois, 16% of its tangible property is located in California, 6% is

21    located in Florida, 6% is located in Massachusetts and 5% is located in Nevada.   Allen Decl., ¶

22    14.

23    As of April 1, 2008, Servisair had approximately 3,507 employees nationwide.

24    Approximately 952 of those employees were employed in California, 505 were employed in New

25    York, 416 were employed in Illinois, 377 were employed in Florida, 345 were employed in

26    Massachusetts and 278 were employed in Nevada.  Allen Decl., ¶ 12.

27    As of April 1, 2008, approximately 28% of the total revenue generated by Servisair for the

28    year 2008 was generated in California, 26% of the total revenue was generated in New York,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

SERVISAIR LLC'S OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND                 3                 CASE NO. CV-08-2716-MHP

1    14.3% of the total revenue was generated in Illinois, 11% of the total revenue was generated in

2    Massachusetts, 9% of the total revenue was generated in Florida and 6% of the total revenue was

3    generated in Nevada.  Allen Decl., ¶ 15.

4                    **2.    Citizenship of Servisair's Owners.**

5            None of Servisair's owners are headquartered in California and none of their business

6    activities substantially predominate in California.  Allen Decl., ¶¶ 5-10.

7                    **a.    Servisair Holding Corp.**

8            Servisair Holding Corp. ("Servisair Holding") is incorporated in Delaware.  It holds

9    64.2% of the ownership interests of Servisair.  Its corporate headquarters are located in Houston,

10   Texas.  Servisair Holding's CEO resides in Paris, France and works in Manchester, England.

11   Servisair Holding's President, Vice President, General Counsel and Secretary, and Treasurer

12   reside and work in Houston, Texas.  One of Servisair Holding's Board of Directors resides in

13   Paris, France and works in Manchester, England.  The rest of Servisair Holding's Board of

14   Directors reside and work in Houston, Texas.  Allen Decl., ¶¶ 5-7.

15           Servisair Holding does not have any employees.  *Id.* at ¶ 5.

16                   **b.    Penauille Holding Inc.**

17           Penauille Holding Inc. ("Penauille") is incorporated in Delaware.  It holds 35.8% of the

18   ownership interests of Servisair.  Its corporate headquarters are located in Houston, Texas.

19   Penauille's CEO resides in Paris, France and works in Manchester, England.  Penauille's

20   President, Vice President, General Counsel and Secretary, and Treasurer reside and work in

21   Houston, Texas.  One of Penauille's Board of Directors resides in Paris, France and works in

22   Manchester, England.  The rest of Penauille's Board of Directors reside and work in Houston,

23   Texas.  Allen Decl., ¶¶ 8-10.

24           Penauille does not have any employees.  Allen Decl., ¶ 8.

25                   **3.    Servisair LLC and Plaintiff Robert Navarro.**

26           Servisair provides aviation ground services to airlines in 19 States.[3]  Servisair must

27   

---

3/      As of July 1, 2007, Servisair provided ground services in 12 States.  As of April 2008, this
number had increased to 19 States.  Allen Decl., ¶ 14.

28   

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

SERVISAIR LLC'S OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND          4          CASE NO. CV-08-2716-MHP

1   comply with the particular directives of its customer airlines, as well as meet the standards for

2   employers at the San Francisco International Airport ("SFO") as set forth in SFO's Quality

3   Standards Program ("QSP"). Allen Decl., ¶ 21.  These standards govern compensation, employee

4   benefits, training and safety, and employer hiring practices.  Compliance with the QSP is required

5   and fines may be assessed for violating the QSP.  The program, adopted by the San Francisco

6   Airport Commission, as referenced in the SFO's Rules and Regulations, was created to enhance

7   security and safety at SFO, and is incorporated into the Local Supplemental Collective

8   Bargaining Agreement which governs the terms and conditions of the Servisair union employees'

9   employment at SFO.  *See supra.  Id.* at ¶¶ 21, 22.

10      In September 2001, a predecessor to Servisair acquired Monarch Aviation, which at that

11   time employed Plaintiff at its facility located at SFO.  Since that time, Plaintiff has been

12   employed as a ramp agent by Servisair at SFO pursuant to a national collective bargaining

13   agreement ("National CBA") and a local supplemental collective bargaining agreement ("Local

14   CBA"), which govern the terms and conditions of his employment.  Allen Decl., ¶  18; Exs. A

15   and B.  Plaintiff does not dispute his California citizenship.  Pl's Compl., ¶ 8.

16      The National CBA governs, *inter alia*, Plaintiff's hours of work and shift schedules and

17   overtime.  The schedules and routes of the airlines were considered in the bargaining of these

18   terms.  The National CBA also provides a Grievance Procedure which governs all disputes

19   between Servisair and the Union concerning the interpretation or application of the terms of the

20   contract.  Allen Decl., ¶ 19.

21      The Local CBA governs the terms and conditions of Plaintiff's employment because he is

22   part of the bargaining unit described as ramp agents, aircraft cleaners and ground support

23   equipment mechanics employed by Servisair at SFO.  Allen Decl., ¶ 20.  For example, the Local

24   CBA governs the bargaining unit's hours of work and shift schedules, rates of pay, overtime and

25   benefits, terms which also were bargained for in light of the routes and schedules of the airlines.

26   Allen Decl., ¶ 20.

27      The Local CBA acknowledges that employers subject to SFO's QSP must comply with

28   the standards imposed by the program:

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

SERVISAIR LLC'S OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND             5             CASE NO. CV-08-2716-MHP

1    Effective January 1, 2007, $11.50 per hour shall be the minimum wage
     rate in effect for Full time Ramp Agents, Aircraft Cleaners and GSE
2    Mechanics, and adjusted on each January 1 thereafter, based on the
     annual percentage change in the Bay Area Cities Consumer Price Index
3    as published by the San Francisco Airport Commission *pursuant to the
     San Francisco International Airport Quality Standards Program
4    (QSP).  These wages reflect the "with benefits" rate called for in the
     QSP*.
5
     Effective January 1, 2007, $12.75 per hour shall be the minimum wage
6    rate in effect for Part time Ramp Agents, Aircraft Cleaners, and GSE
     Mechanics and adjusted on each January 1 thereafter, based on the
7    annual percentage change in the Bay Area Cities Consumer Price Index
     as published by the San Francisco Airport Commission *pursuant to the
8    San Francisco International Airport Quality Standards Program
     (QSP).  These wages reflect the "without benefits" rate called for in
9    the QSP*.  (emphasis added).

10   Allen Decl., ¶¶ 18, 22; Ex. B (emphasis added).

11        "With benefits" includes employee receipt of some or all the following benefits under the

12   QSP: (1) vacation; (2) sick days; and (3) health care coverage.  Servisair is required to, and does,

13   submit an "Annual Employer Certification" to the QSP on an annual basis, certifying that it

14   "offers" these three benefits to its employees, in addition to offering them the option of making a

15   compensation selection of the lower rate plus the aforementioned three benefits or the higher rate

16   without them.  All Servisair employees are provided the first two benefits, vacation and sick days,

17   even if they decline the third health care coverage benefit.  Allen Decl., ¶ 23; Declaration of Eric

18   Jennings, ("Jennings Decl."), ¶ 4; Ex. A.

19        As recently as May 5, 2008, Servisair attended a meeting at SFO with other SFO

20   employers covered by the QSP to discuss various inconsistent interpretations and applications of

21   the QSP by employers covered by the program.  Leo Fermin, SFO's Deputy Airport Director,

22   Business & Finance Division, hosted the meeting.  The purpose of the meeting was to assist

23   employers properly interpret the program's requirements and to solicit suggestions from

24   employers on ways to improve the QSP.  Jennings Decl., ¶ 3.

25        Pursuant to Servisair's interpretation of the terms of the QSP, at the time Plaintiff

26   instituted this action, he was paid at the QSP hourly rate of $11.88.  Plaintiff's hourly rate of pay

27   has since increased to $13.13 under the QSP (and CBA).  Allen Decl., ¶ 25.

28

Morgan, Lewis &
Bockius LLP
Attorneys At Law
New York

SERVISAIR LLC'S OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND                    6                    CASE NO. CV-08-2716-MHP

## III.    THIS COURT HAS DIVERSITY JURISDICTION

### A.    Plaintiff and Servisair LLC Are Diverse.

A district court has diversity jurisdiction over any class action in which there is minimal diversity -- that is, any one plaintiff is a citizen of a different state than any one defendant -- and the amount in controversy exceeds $5,000,000.  *Bodner v. Oreck Direct, LLC*, 2006 U.S. Dist. LEXIS 77193, * 4 (Oct. 10, 2006) (J. Patel) (citing 28 U.S.C. § 1332(d)(2).)

#### 1.    None of Servisair's Owners Were Organized Under the Laws of California.

Plaintiff does not dispute that complete diversity exists between Plaintiff (a California resident) and Servisair LLC (a Delaware company with its company headquarters in Texas). Plaintiff only challenges Servisair to establish the citizenship of its members.

A limited liability company is a citizen of the state or states of which its members are citizens and is not a citizen of the state in which it was organized, unless one of its members is a citizen of that state.  *Johnson v. Columbia Pictures Anchorage, LP*, 437, F.3d 894, 900 (9th Cir. 2006) (matter of first impression); *Hale v. Mastersoft Intern. Pty. Ltd.*, 93 F.Supp.2d 1108, 1112 (D. Colo. 2000).  Under this analysis Servisair's citizenship, as alleged in its Notice of Removal, is Delaware because its owners were also organized under the laws of Delaware.  Accordingly, Servisair is a citizen of Delaware.

#### 2.    Neither Servisair Nor Any of its Owners' Operations Substantially Predominate in California.

The Ninth Circuit has endorsed two general approaches for determining a corporation's principal place of business – the "nerve center" (place of executive functions) and the "place of operations."  Determining which approach to follow requires the court to examine the type of corporation at issue, including the nature and scope of its business activities.[4]

---

[4/]    Determining a principal place of business involves evaluating all circumstances and discerning where the company has the most extensive contacts with or greatest impact on the general public.  *See R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir. 1979).  It is in the state where the corporation touches the greatest portion of the population, where local contact alleviates problems with local prejudice against outsiders, that justifies consideration of the corporation as a citizen of that state.  *See, e.g., Northeast Nuclear Energy Co. v. General Electric Co.*, 435 F. Supp. 344, 346 (D. Conn. 1977) ("If the purpose of diversity jurisdiction is to avoid the effects of prejudice against outsiders, then the principal place of business of a corporation should be the place where it has its greatest contacts with the public,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

SERVISAIR LLC'S OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND                7                CASE NO. CV-08-2716-MHP

1    "[W]here a corporation conducts 'substantially all' of its operations in one state and its

2    headquarters are located in another state," courts should apply a "place of operations" analysis.

3    *Industrial Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1093 (9th Cir. 1990). Under these

4    circumstances, a corporation's principal place of business is the state that "contains a substantial

5    predominance of corporate operations." *Id.* at 1092. A "substantial predominance," in turn,

6    exists only if "the amount of a corporation's business activity in one state [is] *significantly* larger

7    than any other state in which the corporation conducts business." *Tosco Corp. v. Communities*

8    *for a Better Env't*, 236 F.3d 495, 500 (9th Cir. 2001) (emphasis added). The Ninth Circuit has

9    employed this approach in cases where a corporation conducts business in only a couple of states.

10   *See, e.g., Industrial Tectonics*, 912 F.2d at 1093-94 ("In the present case, [the plaintiff's]

11   operations are divided between only two states: California and Michigan. [The plaintiff's]

12   operations are not so spread out that one must look to the corporate headquarters to find a

13   principal place of business."); *see also Lurie Co. v. Loew's San Francisco Hotel Corp.*, 315 F.

14   Supp. 405, 405 (N.D. Cal. 1970) (applying place of operations analysis to conclude that company

15   headquartered in New York and doing business exclusively in California by leasing and operating

16   the Mark Hopkins Hotel had its principal place of business in California).

17   But "where a corporation is doing business over a large geographical area encompassing

18   at least several states more or less equally, then the courts turn their attention to the search for the

19   nerve center." 15 J. Moore, MOORE'S FEDERAL PRACTICE § 102.54[2] (3d ed. 2006). In

20   other words, courts turn their attention to the nerve center where "circumstances in which

21   mapping a corporation's operations . . . fail[s] to identify a true center of corporate activity." *Ho*

22   *v. Ikon Office Solutions, Inc.*, 143 F. Supp. 2d 1163, 1165-66 (N.D. Cal. 2001). In *Industrial*

23   *Tectonics*, this Court endorsed the nerve center approach for circumstances "where a corporation

24   conducts business in many states and does not conduct a substantial predominance of its business

25   in any single state." *Industrial Tectonics*, 912 F.2d at 1093. The "nerve center" inquiry focuses

26   on the location where the corporation's executive and administrative functions are performed. *Id.*

27   at 1092. In most cases, the nerve center turns out to be the corporate headquarters. *Id.*

28   where it 'most impinges,' where it is considered to be 'at home.'").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

SERVISAIR LLC'S OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND          8          CASE NO. CV-08-2716-MHP

1    As leading commentators have explained, "place of operations" and "nerve center" are not

2    as much two separate "tests" as they are factors on a continuum:

3    > As is obvious from this discussion the determination of a corporation's
     > principal place of business depends on the facts of each case.  No simple
4    > test or single element is controlling.  Rather, the courts must consider the
     > entire corporation, its purposes, the activities it carries out, and the
5    > extent and location of these activities.  The weight to be given these
     > elements, however, is a question of law.

6

7    13B Wright, Miller & Cooper, FEDERAL PRACTICE AND PROCEDURE Jurisdiction 2d §

8    3625 (1984).[5]

9    As discussed below, if the Court measures Servisair and its owners' presence by their

10   corporate headquarters, its business substantially predominates in Texas.  Servisair's "nerve

11   center" is located in Texas.  If the Court measures Servisair's presence by the percentage of its

12   property, employees, revenue, and executive and administrative functions in each state, no state,

13   including California, contains a substantial predominance of Servisair's business activities.

14                    a.    **The Relative Size of California Should Be Considered In
                            Determining Whether An Entity's Business Operations
15                          Substantially Predominate There.**

16   In determining whether a company's business operations substantially predominate in

17   California, courts look at many factors including the location of facilities, distribution centers,

18   employees, property ownership, and executive and administrative functions.  *Arellano v. Home*

19   *Depot U.S.A., Inc.*, 245 F. Supp. 2d 1102, 1107 (S.D. Cal. 2003) (in determining whether Home

20   Depot's business substantially predominated in California, court examined number of employees

21   in each state, location of property, and location of executive and administrative functions).

22   Critically, in determining whether California contains a substantial predominance of a company's

23   activities, courts necessarily must take into consideration the fact that California is the largest

24   state and factor in the distorting impact of California's size.  In *Cavanaugh v. Unisource*

25   *Worldwide, Inc.*, 2006 U.S. Dist. LEXIS 28208 (E.D. Cal., Apr. 28, 2006), the court found:

26   / / / /

---

27   [5]    *See also Unger v. Del E. Webb Corp.*, 233 F. Supp. 713, 715 (N.D. Cal. 1964) ("The
     above tests appear to be articulations of substantially the same concept . . . . [N]o single factor is
28   determinative and each case looked to all the facts in reaching its conclusion.").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

SERVISAIR LLC'S OPPOSITION TO             9             CASE NO. CV-08-2716-MHP
PLAINTIFF'S MOTION TO REMAND

1

Unisource's website indicates that it has more than 100 locations in 44 states . . . .  It has 26 locations in California [and] 19 in Florida. . . . .

2

Although more Unisource locations are located in California than in any other state, Florida has 19 locations, only 7% less than California.  Taking into account the larger population in California, this difference is small . .

3

. Because California is the state with the largest population, business activity on a national scale can be expected to be greater in California . . .

4

"[I]t is highly unlikely that Congress intended every national corporation that does more business in California than any other single state, by virtue of that fact alone, to be deemed a citizen of California for the purposes of diversity jurisdiction."

5

6

7    *Id.* at **8-9 *(citing Ho v. Ikon Office Solutions, Inc.*, 143 F. Supp. 2d 1163, 1166 (N.D. Cal.

8    2001).

9         In *Arellano*, California employed approximately 6% more of Home Depot's employees

10   than in the second largest state, Florida.  However, the court compared the percentage of Florida's

11   population that worked for Home Depot to the percentage of California's population that worked

12   for Home Depot and determined that Home Depot's operations did not "substantially

13   predominate" in California:

14

Although the percentage increase from 9.3% [in Florida] to 15.1% [in California] is approximately 62%, *this fact does not take into account the population difference* between California and Florida.  According to the U.S. Census Bureau, in 2000, California had a population of 33,671,648 people, while Florida had a population of only 15,982,378. .  . . Based upon these figures, .15% of Florida's population works for Home Depot, while only .12% of California's population works for Home Depot.

15

16

17

18

19   *Arellano*, 245 F. Supp. 2d at 1107, fn. 1 (emphasis added).  Thus, in both *Cavanaugh* and

20   *Arellano*, the courts found that where California had the most offices and employees but the next

21   largest state was six or seven percentage points behind, the difference was small and did not cause

22   operations to substantially predominate in California.

23              **3.    Employees of Servisair And Its Owners Do Not Substantially Predominate in California.**

24

25         Measuring the presence of Servisair and its owners by comparing the number of their

26   employees in each state with the total population for each state shows that its business does not

27   substantially predominate in California.

28

1

### a. Servisair LLC.

2       As of April 1, 2008, Servisair had approximately 3,507 employees nationwide. Allen

3   Decl., ¶ 12. Approximately 952 employees (27%) were employed in California, 505 (14%) were

4   employed in New York, 416 (12%) were employed in Illinois, 377 (11%) were employed in

5   Florida, 345 (10%) were employed in Massachusetts and 278 (8%) were employed in Nevada.

6   *Id.*

7       However, these percentages do not "take into account the population difference between

8   California and [other states]." *Arellano*, 245 F.Supp.2d at 1107, fn. 1. According to the U.S.

9   Census Bureau, in 2007, California had a population of 36,553,215 people, while New York had

10  a population of only 19,297,729. Svanfeldt Decl., ¶5; Ex. B. Based upon these figures, .0026%

11  of California's population and .00261% of New York's population work for Servisair. *Id.*

12  Further, based on the populations of Nevada, Massachusetts, Illinois and Florida, approximately

13  .105% of Nevada's population works for Servisair, .00534% of Massachusetts' population works

14  for Servisair, .00323% of Illinois' population works for Servisair, and .00206% of Florida's

15  population works for Servisair. *Id.* at ¶ 6. According to these figures, California ranks fifth in

16  terms of highest percentage of Servisair employees employed in the State.

17              ### b. Servisair Holding Corp. and Penauille Holding Inc.

18      Neither Servisair Holding nor Penauille have any employees. Allen Dec., ¶¶ 5, 8,

19          **4. Tangible Property of Servisair And Its Owners Do Not Substantially**
            **Predominate in California.**

20

21              ### a. Servisair LLC.

22      The largest amount of Servisair LLC's tangible property is located in New York. Allen

23  Decl., ¶ 14. As of April 1, 2008, approximately 24% of Servisair's tangible property is located in

24  New York, 21% of its tangible property is located in Illinois, 16% of its tangible property is

25  located in California, 6% is located in Florida, 6% is located in Massachusetts and 5% is located

26  in Nevada. Without even accounting for California's significantly larger population and

27  geographic size, Servisair holds more tangible property in New York [24%] and Illinois [21%]

28  compared to California [16%]. *Id.*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

SERVISAIR LLC'S OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND          11          CASE NO. CV-08-2716-MHP

**b.**    **Servisair Holding Corp. and Penauille Holding Inc.**

Servisair Holding and Penauille collectively hold 100% of the ownership interests of Servisair LLC.  The two corporations do not hold any tangible property apart from their interests in Servisair.   Accordingly, the majority of Servisair Holding and Penauille's tangible property also is located in Illinois.  Allen Decl., ¶¶ 5, 7, 8, 10.

**5.**    **Revenue of Servisair And Its Owners Do Not Substantially Predominate in California.**

**a.**    **Servisair LLC.**

Accounting for the population differences between California, New York, Illinois, Nevada, Massachusetts and Florida, the following revenue was generated per capita in these states in 2008 as of April 1, 2008:  178% per capita in Nevada, 124% per capita in Massachusetts, 104% per capita in New York, 84% per capita in Illinois, 58% per capita in California and 35% per capita in Florida.  Svanfeldt Decl.,¶ 7.  California ranks fifth in terms of highest revenue per capita. *Id.*

**b.**    **Servisair Holding Corp. and Penauille Holding Inc.**

Servisair Holding and Penauille collectively hold 100% of the ownership interests of Servisair LLC.  The two corporations do not have any revenue apart from their interests in Servisair.  Accordingly, the amount of revenue generated by Servisair Holding and Penauille's does not substantially predominate in California.  Allen Decl., ¶¶ 5, 7, 8, 10.

**6.**    **The Executive and Administrative Functions Substantially Predominate in Texas.**

**a.**    **Servisair LLC.**

Servisair LLC's CEO resides in Paris, France and works in Manchester, England. Servisair LLC's President, Vice President, General Counsel and Secretary, Treasurer, Vice President of Human Resources, Regional Vice President, and Vice President and Controller all work and reside in Houston, Texas.  Allen Decl., ¶ 16.  The following administrative functions are located in Texas: payroll, human resources, accounting, finance, marketing and information systems.  Servisair's legal department is located in Houston, Texas.  Allen Decl., ¶ 17.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

SERVISAIR LLC'S OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND                    12                    CASE NO. CV-08-2716-MHP

1    **b.    Servisair Holding Corp. and Penauille Holding Inc.**

2    None of the executives or officers of Servisair Holding or Penauille live or work in

3    California.  Servisair Holding and Penauille's CEO resides in Paris, France and works in

4    Manchester, England.  The corporations' Vice President, General Counsel and Secretary,

5    Treasurer, Vice President of Human Resources, Regional Vice President, and Vice President and

6    Controller all work and reside in Houston, Texas.  Allen Decl., ¶ 5-10.

7    **B.    The Amount in Controversy Vastly Exceeds $5,000,000.**

8    When plaintiff fails to plead a specific amount of damages, the defendant "must prove by

9    a preponderance of the evidence that the amount in controversy requirement has been met."

10   *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 683 (9th Cir. 2006*); Lowdermilk v. U.S.*

11   *Bank Nat'l Ass'n*, 479 F.3d 994, 997-98 (9th Cir. 2007) (when the plaintiff does not specify an

12   amount of damages in a class action lawsuit, for removal purposes "Defendant must prove by a

13   preponderance of the evidence that the damages claimed exceed $5,000,000").  Under the

14   preponderance of evidence standard, a defendant need only make a factual showing that it is more

15   likely than not the amount in controversy exceeds $5,000,000.  *Singer v. State Farm Mut. Auto.*

16   *Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997).

17   "Said burden is not 'daunting,' as courts recognize that under this standard, a removing

18   defendant is not obligated to 'research, state, and prove the plaintiff's claims for damages.'" *Korn*

19   *v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199 (E.D. Cal 2008).  "The ultimate inquiry is

20   what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will

21   actually owe." *Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005); *see*

22   *also Scherer v. Equitable Life Assurance Society of the United States*, 347 F.3d 394, 399 (2d Cir.

23   2003) (recognizing that the ultimate or provable amount of damages is not what is considered

24   when determining the amount in controversy; rather, it is the amount put in controversy by the

25   plaintiff's complaint).

26   Here, Plaintiff asserts that Servisair has made an insufficient factual showing that the class

27   claims in controversy exceed $5,000,000 and that Servisair's fact-based calculations of damages

28   are based on pure speculation.  (Mot. 7:25-27; 8:13-17).  Plaintiff essentially argues that Servisair

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

SERVISAIR LLC'S OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND    13    CASE NO. CV-08-2716-MHP

1   must prove the ultimate amount of damages to which he is entitled (if any) at the outset of this

2   litigation which (albeit impossible), Servisair is not required to do. *Cram v. Elec. Data Sys.*

3   *Corp.*, 2008 U.S. Dist. LEXIS 2847 (S.D. Cal. 2008) ("plaintiffs fail to elaborate on what basis

4   this court should find [trial court] clearly erred or made a ruling contrary to law at this stage in the

5   litigation . . . [defendant] was only required to produce underlying facts showing it is more likely

6   than not the amount in controversy threshold is met"); *Rippee*, 408 F. Supp. 2d at, 986 (removing

7   party need only show "amount in controversy.")  Plaintiff disregards Servisair's extensive fact-

8   based damage calculations in its Notice of Removal.

9          The fact-based damage calculations included in Servisair's Notice of Removal are similar

10   to those facts deemed sufficient by this Court in *Alexander v. FedEx,* 2005 U.S. Dist. LEXIS

11   5129 (N.D. Cal. Mar. 24, 2005) (J. Patel) and exceed the facts deemed sufficient by this Court in

12   *Bodner v. Oreck Direct, LLC*, *supra*.  For the purposes of removal, Servisair conservatively

13   limited the number of putative class members to ramp agents currently employed in California

14   (approximately 405).  Allen Decl., ¶ 12.   However, the class as defined by Plaintiff, includes <u>*all*</u>

15   current and former employees, whether or not ramp agents, who have worked in California in the

16   past four years, and thus would be far greater than 405. Compl. ¶ 24.  Servisair's <u>current</u>

17   California population alone is over 900.  *Id*.  The number of current and former hourly employees

18   who worked in California between April 2004 and April 2008, for example in the last four years,

19   is <u>over 2,800</u>.  *Id.*

20          In addition, rather than using the "maximum statutory penalty" placed "in controversy,"

21   which Servisair was entitled to do, it limited the statutory penalties placed in controversy to a

22   more conservative amount.  *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1046 n.3

23   (9th Cir. 2000) (where a statutory maximum is specified, courts may consider the maximum

24   statutory penalty available in determining whether the jurisdictional amount in controversy

25   requirement is met); *Korn*, 536 F.Supp.2d at 1205. The amount in controversy estimated by

26   Servisair would increase seven times had Servisair used the maximum number of employees and

27   the maximum penalty.

28

Morgan, Lewis &
Bockius LLP
Attorneys At Law
New York

SERVISAIR LLC'S OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND          14          CASE NO. CV-08-2716-MHP

1           **1.     Wages and Statutory Penalties.**

2        Under Plaintiff's theory of the case, if Plaintiff and Servisair's current ramp agents were

3 not provided with a required meal and/or rest periods at least <u>three times a week</u> (the maximum

4 penalty would likely be <u>five</u> times a week) and were entitled to one additional hour of pay for

5 each work day on which a meal and/or rest period was not provided, the potential liability would

6 be <u>*at least*</u>: 405 ramp agents x $35.64 (three hours of pay) x 156 weeks (3 years) = **<u>$2,251,735</u>**.

7 Using the <u>total</u> current population and the maximum penalty, this number would jump to <u>*at least*</u>:

8 952 current employees in California x $35.64 (three hours of pay) x 156 weeks (3 years) =

9 **<u>$5,292,967</u>**.

10        Plaintiff also alleges that he and similarly situated current and former employees are

11 entitled to overtime pay compensation (presumably because work allegedly performed during

12 meal breaks was compensable overtime) because they worked over eight hours a day or 40 hours

13 a week. Compl. ¶¶ 23, 53. Plaintiff does not specify the number of overtime hours he allegedly

14 worked for which he did not receive overtime compensation. Under Plaintiff's theory of the case,

15 if Plaintiff and currently employed ramp agents worked overtime hours during the three hours of

16 meals allegedly not provided per week and were entitled to overtime compensation for each hour

17 worked, the potential liability would be <u>*at least*</u>: 405 putative class members x $17.82 (1.5x base

18 pay) x 3 overtime hours x 156 weeks (3 years)[6] = **<u>$3,377,602</u>**.

19        Plaintiff also alleges that Servisair unlawfully took deductions from his wages and the

20 wages of similarly situated current and former employees to cover health benefits that were not

21 requested or received. Comp. ¶ 61. According to prior versions of the QSP, the difference

22 between the higher and lower hourly rate has always been $1.25. Allen Decl., ¶ 25. Accordingly,

23 under Plaintiff's theory of the case, if $1.25 per hour of work was withheld from his pay and the

24 pay of the putative class members, the total amount of potential liability would be <u>*at least*</u>: 405

25 currently employed ramp agents x $1.25 x 6,240 hours of work (3 years) = **<u>$3,159,000</u>**.

26

27    [6]/     Servisair again conservatively limited the amount in controversy here by using the three-year statute of limitations which governs overtime claims under the California Labor Code.

28 Plaintiff, however, contends he is entitled to a maximum of four years of wages and penalties under section 17200, which has a four-year statute of limitations.

1    Based on the foregoing, it is clearly "more likely than not" that the amount of damages in

2  controversy exceeds **$5,000,000** and indeed exceeds **$11,829,569.**  In addition, Plaintiff contends

3  the putative class members are entitled to waiting time penalties under Labor Code section 203,

4  which Servisair did not include at all in its calculation of damages.  Approximately 1,990

5  employees no longer work for Servisair and were employed by the company between April 2004

6  and April 2008.  Allen Decl., ¶ 13. Accordingly, under Plaintiff's theory of the case, if 1,190

7  former employees are entitled to 30 days of wages (or waiting time penalties), the total amount of

8  potential liability on that claim alone would be *at least:* 1,190 former employees x $11.88/hour x

9  240 hours of work (8 hours/day x 30 days) = **$3,392,928**.

10    Based on the foregoing, the Notice of Removal and declarations submitted by Servisair

11  provide enough facts to establish that "more likely than not" the amount in controversy exceeds

12  $5,000,000, and Plaintiff's motion to remand should be denied.

13                    **2.    Attorneys Fees.**

14    Attorneys' fees are correctly included in computing "the amount in controversy" if they

15  are provided by statute. *Brady v. Mercedes-Benz USA*, 243 F. Supp.2d 1004, 1010 (N.D. Cal.

16  2002).  Attorneys' fees are arguably statutorily available in this action under various sections of

17  the California Labor Code.  As this Court has affirmed in prior decisions, attorneys' fees should

18  be added to the amount in controversy calculations. *Alexander*, 2005 U.S. Dist. LEXIS 5129 *

19  14.

20    Assuming Plaintiff can recover on his claims under the theory of his case, he would

21  undoubtedly urge that he is entitled to receive attorneys' fees of approximately 25% of the total

22  recovery, at least, or **$3,805,624.**  *Cf. In re Quintus Securities Litigation*, 148 F.Supp.2d 967, 973

23  (N.D. Cal. 2001) (noting in the class action settlement context, that the benchmark for setting

24  attorneys' fees is 25 percent of the common fund).

25    Based on the foregoing, it is "more likely than not" that the amount in controversy

26  exceeds **$5,000,000.**  *See Alexander*, 2005 U.S. Dist. LEXIS * 14 ("Even accepting the lower

27  adjusted estimates by the plaintiffs as to some damage categories, plaintiff['s] amount in

28  controversy would still fall well over the jurisdictional minimum because of attorneys' fees and

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

SERVISAIR LLC'S OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND                16                CASE NO. CV-08-2716-MHP

1  punitive damages.)

2  **IV.    PLAINTIFF'S CLAIMS INVOKE FEDERAL QUESTIONS**

3       In addition to diversity jurisdiction, this Court has federal question jurisdiction because

4  Plaintiff's claims are arguably completely preempted by federal laws.

5       **A.    Plaintiff's Claims Are Preempted by the Labor Management Relations Act and the Railway Labor Act.**

6       Plaintiff argues that Servisair has provided an insufficient factual basis showing that

7  Plaintiff's claims invoke a federal question under the Railway Labor Act ("RLA"), or in the

8  alternative the Labor Management Relations Act ("LMRA"), because none of his claims require

9  the Court to construe a provision of the CBA, a threshold which must be met before establishing

10  preemption under both federal laws.[7]  Plaintiff specifically claims that Servisair was required to

11  "give this Court the tools necessary to determine whether interpretation of the CBA will be

12  required to resolve Plaintiff's claims."

13       **1.    The Railway Labor Act.**

14       Plaintiff does not dispute that Servisair is a "carrier" under the RLA.  Congress' purpose

15  in passing the RLA was to promote stability in labor-management relations by providing a

16  comprehensive framework for resolving labor disputes.  *Hawaiian Airlines, Inc. v. Norris*, 512

17  U.S. 246, 252 (1994).  To realize this goal, the RLA established a mandatory arbitral mechanism

18  for "the prompt and orderly settlement" of two classes of disputes.  *Id.* (*citing* 45 U.S.C. § 151a).

19  The first class, those concerning "rates of pay, rules or working conditions," are deemed "major"

20  disputes.  *Id.*  Major disputes relate to " 'the formation of collective [bargaining] agreements or

21  efforts to secure them.' "  *Id.*  The second class of disputes, known as "minor" disputes, "gro[w]

22  out of grievances or out of the interpretation or application of agreements covering rates of pay,

23

---

24  [7]    A removing party is certainly not required to fully brief federal preemption in its Notice of
25  Removal, where the parties have not even attended an initial case management conference.  *See
   Cram v. Elec. Data Sys. Corp.*, 2008 U.S. Dist. LEXIS 2847 (S.D. Cal. 2008) (stating that
26  "plaintiffs fail to elaborate on what basis this court should find [the trial court] clearly erred or
   made a ruling contrary to law *at this stage in the litigation* . . . .") (emphasis added).  At this
27  stage of the litigation, Servisair has provided facts sufficient to show that Plaintiff's claims invoke
   federal questions and were properly removed to this Court. A detailed preemption analysis would
28  be more appropriately addressed in a motion for summary judgment or summary adjudication.
   However, Servisair will submit additional facts and analyses should the Court request it.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

SERVISAIR LLC'S OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND           17           CASE NO. CV-08-2716-MHP

1  rules, or working conditions." *Id.* (citing 45 U.S.C. § 151a).  Minor disputes involve

2  "controversies over the meaning of an existing collective bargaining agreement in a particular fact

3  situation."  *Id.* (*citing Trainmen v. Chicago R. & I.R. Co.*, 353 U.S. 30, 33 (1957).)  Thus, "major

4  disputes seek to create contractual rights, minor disputes to enforce them."  *Id.* at 253.

5          The Ninth Circuit has held that if a state law claim falls within the scope of the RLA's

6  dispute provisions, <u>it is converted into a federal claim</u> under the RLA for purposes of removal

7  jurisdiction.  *Schroeder v. Trans World Airlines, Inc*., 702 F.2d 189, 191 (9th Cir. 1983).

8                    **2.      The Labor Management Relations Act.**

9          Section 301(a) of the Labor Management Relations Act of 1947, 61 Stat. 156, 29 U.S.C. §

10  185(a), provides:

11          Suits for violation of contracts between an employer and a labor organization
            representing employees in an industry affecting commerce as defined in this
12          Act, or between any such labor organizations, may be brought in any district
            court of the United States having jurisdiction of the parties, without respect to
13          the amount in controversy or without regard to the citizenship of the parties.

14          In *Textile Workers v. Lincoln Mills*, 353 U.S. 448 (1957), the United States Supreme

15  Court held that section 301 "not only grant[s] federal courts jurisdiction over claims asserting

16  breach of collective bargaining agreements but also to authorize the development of federal

17  common-law rules of decision, in large part to assure that agreements to arbitrate grievances

18  would be enforced, regardless of the vagaries of state law and lingering hostility toward

19  extrajudicial dispute resolution.  353 U.S. at 455-56;  *Avco Corp. v. Machinists*, 390 U.S. 557,

20  669 (1968) ("§ 301 . . . was fashioned by Congress to place sanctions behind agreements to

21  arbitrate grievance disputes.")  Although the language of section 301 is limited to "[s]uits for

22  violation of contracts," the Supreme Court has expanded section 310 preemption to include cases

23  the resolution of which "is substantially dependent upon analysis of the terms of [a collective

24  bargaining agreement.]"  *Allis Chambers v. Lueck*, 471 U.S. 202, 220 (1985); *Lingle v. Norge*

25  *Div. of Magic Chef, Inc.*, 486 U.S. 399, 421 (1988) (holding "an application of state law is

26  preempted by § 301 of the [LMRA] only if such application requires interpretation of a [CBA].")

27

28

Morgan, Lewis &
Bockius LLP
Attorneys At Law
New York

SERVISAIR LLC'S OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND                    18                    CASE NO. CV-08-2716-MHP

**3.    Plaintiff's Fourth Cause of Action Is Preempted Because The CBA And The QSP Must Be Interpreted and Applied to Resolve It.**

Here, Plaintiff's state claims fall within the scope of the RLA's dispute provision and are also preempted by the LMRA because the application of state law will require the Court to interpret the CBA.  For example, in Plaintiff's Fourth Cause of Action, he alleges that Servisair took "unlawful deductions" from his wages for health care benefits not requested nor received. Compl., ¶ 61.  Regardless of how Plaintiff characterizes his claim, it is actually a breach of contract claim which will require this Court to interpret the CBA (*i.e.,* (1) whether employees who are "offered" health benefits but decline them may be paid the lower hourly rate; (2) whether employees who receive two of the three benefits provided by the QSP may be paid the lower hourly rate; (3) whether employees are entitled to back wages under the QSP; and/or (4) whether payment of the lower hourly rate constitutes an unlawful "deduction" for purposes of determining liability under the California Labor Code).  *Allis Chambers*, 471 U.S. at 220 (breach of contract claims preempted by § 301); *Lingle*, 486 U.S. at 423 (holding application of state law is pre-empted by § 301 if such application requires interpretation of a CBA).  Because Plaintiff's Fourth Cause of Action will require this Court to interpret the CBA and the QSP, a document which governs compensation, hiring and safety practices of employers in the airline industry such as Servisair, it is preempted by the RLA, or in the alternative, the LMRA.  *Avco Corp. v. Aero Lodge No*. 735, 390 U.S. 557 (1968) (federal preemption based on the LMRA is grounds for removal); *Schroeder*, 702 F.2d at 191 (affirming removal, court stated that "the application of the RLA and the necessity of its interpretation establish the existence of a federal question as an essential element of plaintiff's cause of action, providing the basis for removal.").

**4.    Plaintiff's Remaining State Law Causes of Action Are Preempted by the LMRA and RLA**.

Further, Plaintiff's claims for overtime and failure to provide meal breaks are also preempted by the LMRA and RLA because resolution of these claims will require this Court to interpret and apply the QSP in addition to provisions in the CBA governing employee wages, shift schedules and ground safety and Servisair's contracts for ground handling services with its

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

SERVISAIR LLC'S OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND                    19                    CASE NO. CV-08-2716-MHP

airline customers.[8]  *Adams v. Executive Airlines, Inc.* 258 F.3d 7 (1st Cir. 2001) (holding that class claims brought by flight attendants under state law dealing with wages, overtime pay, maternity benefits, meal periods, days off, vacation and other matters were preempted by the RLA because all required interpretation of the CBA).  For the foregoing reasons, this Court will need to interpret various contracts governing and regulating the airline industry.  Thus, Plaintiff's remaining state law claims are also preempted by the RLA, or in the alternative, the LMRA. *Avco*, 390 U.S. 557 (federal preemption based on the LMRA is grounds for removal); *Schroeder*, 702 F.2d at 191 (affirming removal, court stated that "the application of the RLA and the necessity of its interpretation establish the existence of a federal question as an essential element of plaintiff's cause of action, providing the basis for removal.").

### B.    This Court Should Exercise Supplemental Jurisdiction Over Plaintiff's Remaining State Law Claims.

In the event this Court determines that some of Plaintiff's state law claims are not preempted by federal law, it has discretion to exercise supplemental jurisdiction over state law claims that "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  State claims are considered part of the same case or controversy if there is a substantial federal claim arising out of a "common nucleus of operative fact."  *Trs. of the Constr. Indus. and Laborers Health and Welfare Trust v. Desert Valley Landscape and Maint., Inc.* 333 F.3d 923, 925 (9th Cir. 2003).

Here, all of Plaintiff's claims stem from the same basic set of facts and involve the same factual question -- do Servisair's compensation policies and/or practices violate state wage and hour law.

Further, deciding Plaintiffs' state law claims will promote judicial economy and avoid piecemeal litigation of Plaintiffs' claim for many reasons, including that discovery will be "intertwined."  *Id.*

/ / / /

---

[8]/     Resolution of Plaintiff's claims may also require the Court to interpret and apply an International Air Transport Association ("IATA") Standard Ground Handling Agreement ("SGHA") which also sets forth standards with which Servisair must comply.  Allen Decl., ¶ 26.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

SERVISAIR LLC'S OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND                    20                    CASE NO. CV-08-2716-MHP

1    Finally, in the event federal law does not preempt the application of state law to all of

2    Plaintiff's claims, his state claims do not involve "a novel or complex issue of State law."  28

3    U.S.C. § 1367(c)(1).  *Bran v. Sun Pac. Farming Coop.*, 2007 U.S. Dist. LEXIS 19235, *8 (E.D.

4    Cal. Mar. 1, 2007) (where federal court had jurisdiction under the Migrant and Seasonal

5    Agricultural Workers Protection Act, SunPacific failed to demonstrate that novel or complex state

6    law issues prevented Court from exercising supplemental jurisdiction over seven state law causes

7    of action for breach of contract, failure to pay wages and/or overtime, failure to allow meal and

8    rest breaks pursuant to Cal. Lab. Code, § 226.7, failure to keep accurate information and to

9    provide accurate statements of hours and wages under Cal. Lab. Code, § 226 and IWC Wage

10   Order 14, waiting time and penalties under Cal. Lab. Code, § 203, and unfair competition under

11   Cal. Bus. & Prof. Code, § 17200).

12    For the foregoing reasons, this Court should exercise supplemental jurisdiction over all

13   of Plaintiff's claims because of the significant common nucleus of operative facts which exist

14   between the substantial federal questions raised by some, if not all, of Plaintiff's breach of

15   contract and wage claims.

16   **C.    Defendant May Set Out More Specifically The Grounds for Removal
     Through an Opposition to Remand and Supporting Declarations.**

17

18    As this Court has acknowledged on many prior occasions, a Notice of Removal may be

19   amended "to set out more specifically the grounds for removal that already have been stated,

20   albeit imperfectly, in the original notice." *Alexander*, 2005 U.S. Dist. LEXIS at * *7-8 (citing C.

21   WRIGHT, A MILLER & M. KANE, *Federal Practice & Procedure* § 3733 at 358 (3d ed.

22   1998).)  Furthermore, construing a defendant's opposition to a motion to remand as an

23   amendment to its notice for remand is proper. *Id.* (*citing Willingham v. Morgan*, 395 U.S. 402,

24   407, n.3 (1969).)

25    In *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997), the Ninth

26   Circuit endorsed the procedure used in the Fifth Circuit, in which the court considers not only the

27   facts stated in the removal petition, but additional "summary-judgment type evidence relevant to

28   the amount in controversy at the time of removal" which the court may later "require parties to

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

SERVISAIR LLC'S OPPOSITION TO                              21                    CASE NO. CV-08-2716-MHP
PLAINTIFF'S MOTION TO REMAND

1    submit." (quoting *Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1335-36 (5th Cir. 1995).)

2         For the foregoing reasons, this Court should consider Servisair's opposition to Plaintiff's

3    motion to remand as a clarification or explanatory amendment to its Notice of Removal and

4    consider the facts asserted in the opposition and supporting declarations in reaching its decision.

5    **V.    CONCLUSION**

6         For the foregoing reasons, Servisair requests that the Court deny Plaintiff's motion to

7    remand.

8

9    Dated: July 14, 2008                        MORGAN, LEWIS & BOCKIUS LLP

10

11                                               By _____/s/_____

12                                                  Rebecca Eisen
                                                    Attorneys for Defendant
                                                    SERVISAIR, LLC

13   DB2/20751619.1

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK