UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT NAVARRO, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SERVISAIR, LLC, and DOES 1 through 50,<br><br>Defendants.<br>_____ / | No. C 08-02716 MHP<br><br>**MEMORANDUM & ORDER**<br><br>**Re: Motion to Remand** |

On April 24, 2008 plaintiff Robert Navarro, on behalf of himself and others similarly situated, brought an action against Servisair, LLC ("Servisair") in the Superior Court of California for the County of San Francisco. See Docket No. 1, Exh. A (hereinafter "Complaint"). Defendant filed its answer on May 29, 2008 and removed the action to the Northern District of California the same day. Plaintiff now moves to remand this action back to state court. The court has considered the parties' arguments fully, and for the reasons set forth below, the court rules as follows.

BACKGROUND

Navarro claims his employer, Servisair, inadequately compensates him while he is in Servisair's employ. Id. Servisair provides aviation ground services. Specifically, it provides airline ramp services, cabin cleaning services and cabin search services. Allen Dec., Exh. D. All of the putative class members, as defined in the complaint, are or were employed in California and all of the claims seek relief pursuant to the California Labor Code. Specifically, plaintiff makes claims for: 1) unpaid wages; 2) missed meal periods; 3) unpaid overtime wages; 4) unlawful deductions

1 from wages; 5) improper wage statements; 6) waiting time penalties; and 7) restitution of unpaid
2 wages under California's Unfair Competition Act.  See Complaint.

3       Servisair claimed the following bases for federal court jurisdiction in its notice of removal:
4 1) federal question jurisdiction based on preemption of state law claims by the Airline Deregulation
5 Act ("ADA"); 2) federal question jurisdiction based on preemption of state law claims by the Labor
6 Management Relations Act ("LMRA") and the Railway Labor Act ("RLA") because resolution of
7 the claims at issue requires interpretation of the collective bargaining agreement ("CBA") between
8 the parties; and 3) diversity jurisdiction based on the individual plaintiff's claims for over $75,000
9 and the class's claims for over $5 million under the Class Action Fairness Act of 2005 ("CAFA").
10 See Docket No. 1.

12 LEGAL STANDARD

13       Removal under 28 U.S.C. section 1441(b) is permitted for actions over which a federal
14 district court could have exercised original jurisdiction.  The removing party bears the burden of
15 establishing that removal is proper.  Emrich v. Touche Ross & Co., 846 F.2d 1190, 1195 (9th Cir.
16 1990).  The removal statutes are strictly construed such that any doubts are resolved in favor of
17 remand.  Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).

19 DISCUSSION

20       Plaintiff claims none of the three bases for federal jurisdiction cited by defendant have merit.
21 First, he claims defendant has failed to demonstrate preemption of state law claims by the ADA,
22 which requires a showing that the claims pled will result in the regulation of rates, routes or services
23 of an air carrier.  Defendant does not take issue with this argument and seems to have withdrawn this
24 basis for jurisdiction.  Consequently, the court will not discuss this further.  Second, plaintiff claims
25 federal question jurisdiction is unavailable because defendant has failed to demonstrate preemption
26 of state law claims by the LMRA and the RLA, which requires a showing that resolution of the
27 claims will require interpretation of a collective bargaining agreement.  Finally, plaintiff claims
28 diversity of citizenship jurisdiction under 28 U.S.C. section 1332 or the CAFA pursuant to 28 U.S.C.

2

section 1453 is also unavailable because defendant has failed to demonstrate that each member of Servisair is not a citizen of California and because defendant has not provided a factual basis for concluding that plaintiff's amount in controversy exceeds $75,000 or that the class claims exceed $5,000,000.

I.   Federal Question Jurisdiction

Defendant removed this action to this court based upon federal question jurisdiction by claiming that Navarro's claims were preempted by: 1) section 301 of the LMRA; and 2) section 151 of the RLA.

### A.   LMRA

The LMRA provides, under section 301:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). Although the language of section 301 is limited to "[s]uits for violation of contracts," the Supreme Court has expanded section 301 preemption to include cases the resolution of which "is substantially dependent upon analysis of the terms of [a collective bargaining agreement]." Allis-Chalmers v. Lueck, 471 U.S. 202, 220 (1985).

### B.   RLA

The RLA established a mandatory arbitral mechanism for "the prompt and orderly settlement" of two classes of disputes. Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 252 (1994) (citing 45 U.S.C. § 151a). The first class, those concerning "rates of pay, rules or working conditions," are deemed "major" disputes. Id. Major disputes relate to "the formation of collective [bargaining] agreements or efforts to secure them." Id. (quotation omitted). The second class of disputes, known as "minor" disputes, "gro[w] out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." Id. at 252–53 (citing

1  45 U.S.C. § 151a). Minor disputes involve "controversies over the meaning of an existing collective
2  bargaining agreement in a particular fact situation." Id. at 253 (citing Trainmen v. Chicago R. &
3  I.R. Co., 353 U.S. 30, 33 (1957)). Thus, "major disputes seek to create contractual rights, minor
4  disputes to enforce them." Id.

### C. Law of Preemption

The preemption analysis under both federal statutes is identical. Hawaiian Airlines, 512 U.S. at 263 ("Given this convergence in the pre-emption standards under the two statutes, we conclude that Lingle provides an appropriate framework for addressing pre-emption under the RLA, and we adopt the Lingle standard to resolve claims of RLA pre-emption."). Lingle, which discussed LMRA preemption, held that "an application of state law is preempted by [the LMRA] . . . only if such application requires the interpretation of a collective bargaining agreement." Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 421 (1988). However, "when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." Livadas v. Bradshaw, 512 U.S. 107, 124 (1994) (citing Lingle, 486 U.S. at 413); see also Atchison, Topeka and Santa Fe Ry. Co. v. Buell, 480 U.S. 557, 564–65 (1987) (the RLA does not pre-empt "substantive protection . . . independent of the [CBA]").

Thus, all employment disputes where a CBA is in effect are not preempted by the LMRA or the RLA. Specifically, "nonnegotiable state-law rights . . . independent of any right established by contract" are not preempted. Allis-Chalmers, 471 U.S. at 213. In other words, the LMRA and RLA do not preempt claims to vindicate state law rights that are: 1) independent; and 2) nonnegotiable such that they cannot be bargained away in a CBA. Miller v. A T & T Network Sys., 850 F.2d 543, 545–47 (9th Cir. 1988) (no preemption if plaintiff seeks to pursue state-law claims that rest on "independent, nonnegotiable state-law rights"); see also Valles v. Ivy Hill Corp, 410 F.3d 1071, 1081 (9th Cir. 2005) (California's statutorily guaranteed meal periods are never subject to waiver by a collective bargaining agreement).

D.    <u>Analysis</u>

It is undisputed that the employment relationship between the parties here is governed by a CBA. Allen Dec., Exh. A. Defendant argues that plaintiff's fourth claim for "unlawful deduction from wages" under the California Labor Code sections 221 and 223 is in actuality a breach of contract claim under the guise of a state law cause of action. Plaintiff's complaint states that "DEFENDANTS have violated Labor Code §§ 221, 223, and IWC order No. 9, §§ 8 & 9 by unlawfully taking deductions from PLAINTIFFS' and similarly situated employees compensation to cover *health benefits* that were neither requested nor received." Complaint, ¶ 61 (emphasis added).

Article V of the CBA discusses rates of pay and states that "[p]rovisions governing hourly rates of pay shall be set forth in Local Supplemental Agreements in accordance with Article XX of this National Agreement." Allen Dec., Exh. A at 6. Article V of the Local Supplement states:

> Effective January 1, 2007 $11.50 per hour shall be the minimum wage rate in effect for Full time Ramp Agents, Aircraft Cleaners, and GSE Mechanics, and adjusted on each January 1 thereafter, based on the annual percentage change in the Bay Area Cities Consumer Price Index as published by the San Francisco Airport Commission pursuant to the San Francisco International Quality Standards Program (QSP). These wages reflect the 'with benefits' rate called for in the QSP.
>
> Effective January 1, 2007 $12.75 per hour shall be the minimum wage rate in effect for Part time Ramp Agents, Aircraft Cleaners, and GSE Mechanics and adjusted on each January 1 thereafter, based on the annual percentage change in the Bay Area Cities Consumer Price Index as published by the San Francisco Airport Commission pursuant to the San Francisco International Quality Standards Program (QSP). These wages reflect the 'without benefits' rate called for in the QSP.

<u>Id.</u>, Exh. B at 3. Furthermore, defendant's Vice President of Human Resources, Craig Allen, testified that according to prior versions of the San Francisco International Quality Standards Program ("QSP"), the difference between the higher and lower hourly rate has always been $1.25. Allen Dec., ¶ 25.

The QSP sets forth a number of benefits that must be provided to covered employees. In addition to setting forth standards on paid days off and un-paid leave, it states that "[c]ompany paid membership in a group medical plan should be at least equivalent to the group rate of an HMO membership with the most members in California." <u>Id.</u>, Exh. C at 3. Allen testified that "with benefits" under the QSP includes employee receipt of some or all the following benefits: 1) vacation; 2) sick days; and 3) health care coverage. <u>Id.</u>, ¶ 23. Offering these three benefits is

5

1  mandated by the QSP. See id., Exh. D. Furthermore, Servisair is required to offer its employees
2  "the option of making a compensation selection of the lower rate plus the aforementioned three
3  benefits or the higher rate without them." Id., ¶ 23.

4      In sum, the CBA incorporates both the Local Supplemental and the QSP, which contain
5  provisions about what benefits must be provided and the associated rate of pay. Consequently,
6  interpretation of any one of these three documents requires interpretation of the CBA.

7      There is no argument here that the CBA purports to waive the rights guaranteed by
8  California Labor Code sections 221 and 223. It is established law in this Circuit that sections 221
9  and 223 are non-negotiable. See Valles, 410 F.3d 1082 (rights defined in California Labor Code
10 section 200 et seq. are never subject to waiver by a CBA and therefore do not require interpretation
11 of the CBA). Thus, the only task before the court is to analyze the first prong: whether resolution of
12 plaintiff's claims are "independent of any right established by the contract." Allis-Chalmers, 471
13 U.S. at 213. "Independent rights are those state-law rights that can be enforced without any need to
14 rely on the particular terms, explicit or implied, contained in the labor agreement." Miller, 850 F.2d
15 at 546.

16     In paragraph sixty-one of his complaint, plaintiff seems to allege that he was paid the lower
17 wage rate even though he did not request nor receive health benefits. This, he claims, led to a breach
18 of California Labor Code sections 221 and 223. Section 221 of the California Labor Code states: "It
19 shall be unlawful for any employer to collect or receive from an employee any part of wages
20 theretofore paid by said employer to said employee." Cal. Lab. Code § 221. Additionally, section
21 223 states: "Where any statute or contract requires an employer to maintain the designated wage
22 scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated
23 by statute or by contract." Id. § 223.

24     Plaintiff has not presented violations of any statute that requires Servisair to maintain a
25 designated wage scale. Consequently, the court assumes that the invocation of California Labor
26 Code section 223 must relate to a contract. The only contracts at issue here are the CBA, the Local
27 Supplemental and the QSP. Allegations of breach of any of these with respect to the provision of
28 health benefits and wages related to the same converts this cause of action into a claim for the breach

United States District Court
For the Northern District of California

6

1  of the CBA. This cause of action may therefore raise a colorable federal question. See BIW
2  Deceived v. Local S6, 132 F.3d 824, 832 (1st Cir. 1997) ("the artful pleading doctrine permits a
3  district court to recharacterize a putative state-law claim as a federal claim when a review of the
4  complaint, taken in context, reveals a colorable federal question within a field in which state law is
5  completely preempted.").

6        Plaintiff argues that since Servisair gives its employees "the option of making a
7  compensation selection of the lower rate plus the aforementioned three benefits or the higher rate
8  without them," the resolution of this action depends not on interpretation of the contract, but on
9  factual circumstances surrounding plaintiff's choices. Plaintiff alleges that he did not request nor
10 receive health benefits. This line of reasoning, however, is unpersuasive. Here, defendant could
11 claim that it was allowed to pay the lower rate even if health insurance was offered and rejected.
12 Specifically, the court will have to resolve these two questions: 1) whether employees who are
13 offered health benefits but decline them may be paid the lower hourly rate; and 2) whether
14 employees who receive two of the three benefits provided by the QSP may be paid the lower hourly
15 rate. Resolution of both these questions may require interpreting the scope of the base-pay rate
16 provision of the CBA. At the hearing on this matter, plaintiff also claimed that a written
17 authorization is necessary to deduct monies designed to cover health care benefits. What plaintiff
18 does not realize, however, is that the collective bargaining agreement could be that written
19 authorization.

20       In sum, when plaintiff's state-law claims as stated in his fourth cause of action are
21 recharacterized, they pass the colorability test. They are thus arguably preempted. This action
22 therefore requires more than mere consultation with the CBA, it can require actual interpretation of
23 the CBA. The court does not now determine if any of plaintiff's causes of action are actually
24 preempted, but leaves the resolution of this question for another day. The court simply holds that
25 enough of a federal question is presented here such that the court may exercise jurisdiction at this
26 stage without finding any of plaintiff's causes of action actually preempted. The remaining causes
27 of action, which stem from a common nucleus of operative fact, are also properly in this court
28 because of this court's supplemental jurisdiction. See 28 U.S.C. § 1367(a).

In the alternative, the court also finds that diversity jurisdiction is present here.

II.     Diversity Jurisdiction

    A.     Diversity of Parties

Plaintiff claims that defendant, a limited liability company ("LLC") must demonstrate that each of its members is diverse from plaintiff because the citizenship of an LLC is the citizenship of its members. See Johnson v. Columbia Properties Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006). Defendant agrees, and presents evidence that it is owned by two holding companies, both of whom are Delaware corporations. Allen Dec, ¶¶ 4–10. Specifically, Servisair Holding Corp. owns 64.2% of defendant Servisair and Penauille Holdings Inc. owns 35.8% of defendant Servisair. The corporate headquarters of both holding companies are located in Texas and nobody on their Boards of Directors resides in California. Id.

Defendant then argues that it cannot be considered a citizen of California for diversity purposes because it is incorporated in Delaware and its principal place of business is in Texas as all of its operations are centered there. Id., ¶ 17. Specifically, defendant argues, at length, that it is not a citizen of California under either the "nerve center" theory or the "place of operations" theory even though a quarter of its employees are located here and it receives 28% of its revenues from California. Id., ¶¶ 12, 15. More of defendant's employees reside in California and it receives more of its revenues from California than from any other state. Id. However, defendant also employs a substantial number of individuals in New York and Illinois and receives a substantial amount of its revenue from those states. Id. Consequently, Servisair argues that there is no one state where Servisair's activities predominate. This argument, however, misses the mark because for diversity purposes, the state of incorporation and primary place of business of the LLC are irrelevant.

Here, the residence inquiry focuses on the LLC members. Defendant states that neither Servisair Holding Corp. nor Penauille Holding Inc. hold any tangible property or generate any revenue apart from their interest in Servisair. Allen Dec, ¶¶ 7, 10. Furthermore, neither corporation has any employees. Id., ¶¶ 5, 8. Though defendant summarily states that neither holding company's business operations predominate in California, id., there is no evidence to the contrary. Thus,

8

although only minimal diversity is required under 28 U.S.C. section 1332(d)(2)(A), complete diversity of citizenship exists between the named plaintiff and the defendant.

Plaintiff contends that defendant's failure to specify its members' residence in the notice of removal is determinative. Specifically, he claims that allegations set forth in defendant's opposition to the motion to remand are time-barred and prohibited. The court finds that defendant's notice of removal was deficient as originally filed because it alleged citizenship in a conclusory manner. See Docket No. 1, ¶ 11 (alleging Servisair's residence as a corporation, not an LLC). However, for the reasons set forth below, the court considers defendant's opposition as an amendment to its notice of removal and rejects plaintiff's argument to the contrary.

It is well settled that a defendant's notice of removal may be amended freely prior to the expiration of the initial thirty-day removal period established by 28 U.S.C. section 1446. See Barrow Dev. Co. v. Fulton Ins. Co., 418 F.2d 316, 318 (9th Cir. 1969) (allowing amendment where allegations of jurisdiction were "defective in form but not so lacking in substance as to prevent their amendment"); Smiley v. Citibank, 863 F. Supp. 1156, 1162 (C.D. Cal. 1993); 28 U.S.C. § 1653. After the thirty-day removal period, case law indicates that the notice may be amended "only to set out more specifically the grounds for removal that already have been stated, albeit imperfectly, in the original notice." C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 3733 at 358 (3d ed. 1998). Furthermore, construing a defendant's opposition to a motion for remand as an amendment to its notice for removal is proper. See Willingham v. Morgan, 395 U.S. 402, 407 n.3 (1969).

Defendant argues that it does not offer new bases for removal, but only explains and clarifies previously asserted bases. Taking defendant's argument to the logical extreme would allow removing defendants to merely state that they are removing "based on federal question jurisdiction and diversity jurisdiction." The removing defendants can then wait until a motion to remand is filed in order to provide factual support. Case law, however lenient, does not support this conclusion.

Defendant's heavy reliance upon this court's decision in Alexander v. FedEx Ground Package System, Inc., No. C 05-0038 MHP, 2005 WL 701601 (N.D. Cal. March 25, 2005) (Patel, J.), is to no avail because it is factually distinguishable. There, defendant's had specified the

9

1  *legal* basis for removal. Specifically, defendant had stated that the minimum amount in controversy, $75,000, had been met. They had merely neglected to provide the *factual* basis for the same. In this respect, that action was indistinguishable from Cohn v. Petsmart, 281 F.3d 837, 840 (9th Cir. 2002). Here, however, defendant failed to specify the legal basis for removal. Defendants failed to allege that the residence of each member of the LLC was diverse. Thus, the face of the removal petition did not properly state the basis for removal, let alone provide factual support for the same. An appropriate parallel to Alexander could be drawn if defendant had specified that the residence of each member of the LLC was diverse, but neglected to specify their states of residence. That is clearly not the case here.

The notice of removal treated defendant as a corporation, not an LLC. This prompted plaintiff to file a motion to remand. In opposition to that motion, defendant demonstrated that diversity of citizenship does in fact exist, even though it did not specify the citizenship of the members of the LLC in its notice of removal. The court is thus presented with a conundrum: either remand the case due to defendant's oversight even though diversity jurisdiction exists, or create perverse incentives whereby plaintiffs are forced to bring motions to remand merely to ascertain the factual underpinnings of the bases alleged in a notice of removal.

Since diversity of citizenship exists here and defendant is not attempting to manufacture the same, the court will consider defendant's opposition as an amendment to its notice of removal. However, in order to dissuade sloppy drafting and eliminate perverse incentives, the court will award plaintiff attorneys fees and costs associated with bringing this motion to remand. Specifically, plaintiff is granted leave to file, within thirty (30) days of the date of this order, an application for a monetary award (and a proposed order) outlining the costs and fees he incurred with respect to preparing and arguing the diversity of citizenship portion of his motion to remand. Defendant may respond within twenty (20) days of the date of plaintiff's filing as to reasonableness of costs and fees only.

B.    Amount in Controversy

10

Plaintiff also claims that defendant cannot demonstrate that plaintiff's individual claims against defendant exceed $75,000. Defendant does not take issue with this argument. Consequently, to satisfy the amount in controversy requirement, defendant must demonstrate that the $5 million minimum amount in controversy standard under 28 U.S.C. section 1332(d)(2) is met. Where the amount in controversy is unclear from the plaintiff's complaint, the Ninth Circuit has held that "'the defendant bears the burden of actually proving the facts to support jurisdiction, including the jurisdictional amount." Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 403 (9th Cir. 1996) (quoting Gaus v. Miles, Inc., 980 F.2d 584, 586–67 (9th Cir. 1992)). Specifically, the court held that "in cases where a plaintiff's state court complaint does not specify a particular amount of damages, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds [the statutory minimum]." Id. at 404; see also Abrego Abrego v. Dow Chemical Co., 433 F.3d 676, 682–86 (9th Cir. 2006).

Plaintiff argues that defendant's calculation of the amount in controversy is not based on evidence and consequently, is too speculative to meet the preponderance of the evidence standard. This is incorrect. Defendant relies on the statutes in question to determine the potential recovery of the class.

Plaintiff alleges a class of "[a]ll current and former employees of DEFENDANTS who worked in the State of California at any time from time period commencing four years from the filing of this action through the entry of final judgment in this action." Complaint at 6. He claims that he and others similarly situated regularly worked through their meal periods. Accordingly, he and members of the class were not compensated for all hours actually worked and are entitled to one hour of pay for each day the meal period was not provided. Although unclear from the complaint, plaintiff seems to demand overtime pay for that hour. Thus, a full-time employee who has worked for a year with no daily meal period would be entitled to approximately two hundred fifty hours of back-pay, assuming that he works five days a week for fifty weeks per year. At an overtime rate of approximately fifteen dollars an hour, this comes to $3,750 per full-time employee per year. Further, plaintiff claims an unlawful deduction of $1.25 per hour was taken from his pay for health benefits. See Complaint, ¶ 62; see also Allen Dec., ¶ 25. At eight hours a day for five days a week

11

1  for fifty weeks per year, this comes to another $2,500 per employee per year for a total of $6,250 per
2  full-time employee per year. In order to meet the $5 million bar, the class need only consist of 800
3  full-time employees for one year. This is easily met since defendant currently employs over 900
4  employees in California and the purported class reaches back four years. Allen Dec., ¶ 12.

5  Further, defendant has employed over 1,990 employees in California in the past that are no
6  longer in its employ. Id., ¶ 13. The statutory waiting time penalties claimed by plaintiff amount to
7  thirty days pay per class member that is no longer in defendant's employ. See Cal. Labor Code
8  § 203. With respect to the approximately 2,000 California employees no longer employed by
9  Servisair, this amount could be $10/hour * 8 hours/day * 30 days * 2,000 former employees = $ 4.8
10 million.

11 In light of these numbers, this court is convinced that the amount in controversy requirement
12 is met. Although plaintiff claims defendant simply invents numbers in order to meet the amount in
13 controversy requirement, he offers no alternative. For instance, he claims that defendant's
14 calculations take into account three meal period violations per week without arguing that the same is
15 untrue. He does not limit his claim by stating that only a certain number of hours went
16 uncompensated. Nevertheless, he seeks remand. Plaintiff cannot have his cake and eat it too.

17 Finally, plaintiff is correct when arguing that attorneys fees should not be included in the
18 amount in controversy since attorneys fees are awarded from the common fund award. However,
19 since defendant has shown that the common fund at issue here meets the $5 million amount in
20 controversy requirement without including attorneys fees, the court has diversity jurisdiction over
21 this action.

22 CONCLUSION

23 For the foregoing reasons, plaintiff's motion to remand is DENIED. Plaintiff may file an
24 application for costs and fees within thirty (30) days of the date of this order and defendant may
25 respond as to the reasonableness of the request within twenty (20) days thereafter.

26 IT IS SO ORDERED.

27
28 Dated: August 14, 2008

MARILYN HALL PATEL
United States District Court Judge

12

Northern District of California